UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>QUINTON WALLACE | Crim. No. 08-52 |

Pollak, J.                                                                                                                                                                                                                                                                        June 12, 2009

**MEMORANDUM AND ORDER**

Quinton Wallace has been charged in a four-count indictment with (1) possession of marijuana with the intent to distribute; (2) possession of marijuana with the intent to distribute within 1000 feet of a school; (3) possession of a firearm in furtherance of a drug trafficking crime; and (4) being a felon in possession of a firearm.  He was arrested after his residence at 5509 Lansdowne Avenue, Philadelphia, was searched, pursuant to a search warrant, by agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on January 11, 2008.  The searching officers uncovered the firearms and narcotics that form the basis of the indictment.  Now before the court is defendant's motion to suppress the evidence seized, which argues that the affidavit underlying the search warrant did not provide the necessary probable cause for the warrant to issue.

**I.     THE AFFIDAVIT**

The affidavit in support of the application for a search warrant was written by Gary

Malone, a special agent with ATF.  Agent Malone is assigned to the Philadelphia field office, and had been for three years at the writing of the affidavit on January 10, 2008.  He was investigating a drug distribution organization known the Lansdowne Avenue Gang when he sought this warrant to search Wallace's residence.

The information in the affidavit is largely based on information provided to Agent Malone from a confidential source, referred to as C/S.  C/S is a former low-level drug distributor who now works with law enforcement.  Agent Malone noted that the C/S was a reliable ATF source, who has provided information in the past, much of which was verified by other sources and none of which was disproved.  The affidavit does not indicate how long the C/S has been working with law enforcement or under what circumstances the cooperation began.  The affidavit also does not provide any specifics about the information the C/S has provided in the past, other than noting that information provided by the C/S resulted in the seizure of at least three illegally obtained firearms and the arrest of a felon in possession of a firearm.

The C/S first provided information about Wallace on November 28, 2007, and it is unclear at what intervals the C/S provided information after this point.  The information provided by the C/S included the following:  Wallace lives at 5509 Lansdowne Avenue, in a white three-story row home with a big open lot to the west.  The week of November 1, 2007, the C/S was inside the home and observed, in the 3d floor front bedroom, a black Ruger pistol, bulk quantities of marijuana, a scale, and items for packaging drugs.

The C/S learned from other sources that, after November 1, 2007, Wallace was the victim of a street robbery, where someone identified as Thomas Thomas took Wallace's Ruger pistol, demoralizing and embarrassing Wallace and making him very fearful of Thomas.  The C/S also said that at some time between late November and December 15, 2007, Wallace and another person attempted to rob a drug house in the 5500 block of Oxford Street but "bit off more than [they] could chew" and were unsuccessful.  Wallace apparently shot the window of the house before fleeing, and the C/S predicted that the unknown person who controls the drug house will at some point retaliate against Wallace for the shooting.  It is not clear how the C/S learned about this robbery attempt.  Agent Malone found no records of a person or house shot in that area during this time period, but he indicated his belief that "parties involved in such incidents do not contact the police due to their own criminal liability."

The C/S also told ATF that Wallace had been regularly selling drugs on the street from 4 p.m. to 2 a.m. for at least a year, but that Wallace became frightened after the unsuccessful robbery and so was afraid to leave his house; he instead sent his minor brother out to sell the drugs.  The C/S saw Wallace at the entrance of his residence on January 6, 2008 with a new silver pistol.  On January 9, 2008, the C/S went to Wallace's residence and learned that Wallace was expecting a delivery of bulk crack cocaine and marijuana in the near future.  It is not clear whether the C/S spoke to Wallace to learn this information or whether it came from another source.

Agent Malone drove to the address given by the C/S and confirmed that the house resembled the description given.  A records check revealed that an individual named Michael Vann aka Tony Vaughn had given that address as his own.  Vann has a previous Philadelphia Court of Common Pleas conviction for possession with the intent to distribute a controlled substance.

Agent Malone concluded his affidavit with the following:

> Your affiant has received accurate, consistent, and updated information relative to a convicted felon in possession of a "new" firearm on two occasions.  Your affiant will note that information provided by the informant has resulted in the seizure of numerous firearms on two prior occasions.  It is your affiant's belief that this information is accurate and credible.  The reasons for my belief are that the observations are made by the informant and not based on hearsay and further that this is a proven reliable source of information which has been continually corroborated.  It is also your affiant's belief that it is the duty of Law enforcement to seize the illegal firearm possessed/in control of Quinton Wallace and possibly available to Michael Vann.  In your affiant's experience, persons who can obtain firearms quickly and who are willing to use them, as Wallace has shown, are more likely to use a firearm when in fear of both harassment and or retaliation within their own neighborhoods.  Wallace fits both of the aforementioned categories.

Agent Malone then averred that a search of 5509 Lansdowne Avenue would yield evidence of violations of firearms and drug laws, and he sought permission to search the residence.  Magistrate Judge M. Faith Angell found that the affidavit supported a finding of probable cause and granted the application.  The warrant was executed on January 11, 2008.

## II.   DISCUSSION

The review of the warrant is somewhat limited; the question is whether "the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).  Probable cause must be evaluated in light of the totality of the circumstances, as presented to the magistrate. *Illinois v. Gates*, 462 U.S. 213 (1983).

### A.   Validity of the Warrant

Defendant's challenge to the validity of the warrant focuses on three aspects of Agent Malone's affidavit: whether it establishes the veracity of the C/S, whether it provides a way to evaluate the C/S's basis of knowledge, and whether any of the C/S's information was corroborated.  Defendant argues that the affidavit does not provide sufficient assurances of reliability or quality of information to support the existence of probable cause.  The government in response points to the direct observations of the C/S listed in the affidavit, the known reliability of the C/S in the past, and the corroboration of some of the C/S's information by Agent Malone.

#### 1. C/S's Veracity

Defendant argues that the affidavit does not provide a sufficient basis for concluding that the C/S was credible.  He notes that the affidavit does not provide any details about the kind or quality of the information provided in the past, about how long

the police have been using this C/S, or about the circumstances under which the C/S began cooperating with the police.  The government responds by first noting that the court is to focus on what the affidavit contains, rather than what it does not contain.  *See United States v. Conley*, 4 F .3d 1200, 1205 (3rd Cir. 1993).  The government then points to several sections of the affidavit providing a basis for the C/S's veracity, including that the C/S has provided information to the ATF on "numerous" occasions, that much of this information has been verified, that no information provided by the C/S has ever been disproved, that the C/S has provided information specifically about individuals involved in the Lansdowne Avenue Gang that has been verified, and that information provided by the C/S has resulted in the seizure of illegally obtained firearms on at least two prior occasions.

    The affidavit must include at least some indication that the C/S was reliable in order for it to be reasonable to rely on the information provided by the C/S.  Indicia of reliability include the fact that an informant has provided reliable information in the past, that an informant is willing to testify at trial, the existence of multiple interviews of an informant to better assess credibility, and the corroboration of informant information through other investigation or a controlled buy.  *See, e.g.*, *United States v. Yusuf*, 461 F.3d 374, 380-81 (3d Cir. 2006) (informants willing to testify;); *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993) (disinterested witness with no reason to not tell truth); *United States v. Pearson*, 181 F. App'x 192, 195 (3d Cir. 2006) (informants who had provided

reliable information in the past and who participated in a corroborating controlled buy).

Though it would certainly have been useful to have the other pieces of information identified by defendant available to the magistrate judge, the government is correct that the affidavit does provide some information from which to conclude that the C/S was reliable. The affidavit set forth that the C/S was not an anonymous source but rather a known cooperator who had provided accurate and useful information in the past. This is not a "bare-bones" affidavit or one reliant solely on anonymous tips. The information does provide a limited basis for a conclusion that the C/S's information was reliable.

### 2. C/S's Basis of Knowledge

Defendant argues that the affidavit does not provide information about how the C/S came to possess the information provided and argues that much of it may have been pure rumor or speculation. The government focuses on the specific details the C/S provided and specific observations the C/S claims to have made.

Defendant correctly points out that the majority of the information provided in the affidavit is without indication of how it was obtained. The C/S's first-hand observations are limited to observations of a pistol, drugs, and drug paraphernalia "out in the open" in the residence on November 1, 2007 and the observation of Wallace at the entrance of the residence with a silver pistol on January 6, 2008. It is not clear how the C/S learned the other information provided about the Thomas street robbery, Wallace's selling schedule and subsequent abandonment of that schedule, and the botched robbery of the drug house.

It is also not clear from the affidavit whether the C/S actually had a conversation with the defendant on January 9, 2008, as the government avers; the affidavit merely states that the C/S made contact with the defendant that day and "during this contact, he/she learned that Wallace was expecting" a drug delivery. Perhaps the inference is that the C/S learned this information from speaking with the defendant, but the affidavit certainly does not use language making this explicit.

The problems with determining the C/S's basis for the knowledge he claims undercut any substantial basis for a finding of probable cause. For example, the C/S's conclusion that the defendant was afraid of Thomas and "would surely be the victim of retaliation" for the botched robbery attempt is really just a speculative hunch based on hearsay, and Agent Malone used these pieces of information to conclude that Wallace would be more likely to use a firearm because he feared harassment and retaliation in his own neighborhood. Though some reliance should justifiably be placed on Agent Malone's conclusions in light of his experience and training, I find it hard to give great weight to this conclusion because there is so little known or sourced information supporting it.

### 3. Corroboration of C/S's Information

Defendant correctly points out that Agent Malone apparently did not attempt to corroborate very much of the information provided by C/S, and that those details he did corroborate were completely innocuous, without suggestion of criminal activity. The

agent was able to corroborate that the C/S's description of the house was accurate and that Wallace had given the address to police as his residence in six of eight prior contacts with police.  However, no other surveillance of the residence was done to confirm that the defendant actually resided there or to see if any trafficking-type activity was evident.  While *Gates* holds that the fact that only "innocent details" have been corroborated is not, itself, problematic, because "innocent behavior will frequently provide the basis for a showing of probable cause," 462 U.S. at 243 n.13, no behavior at all was corroborated here.  No investigation, other than the fact that the defendant had given this address to police as his residence, corroborated that the defendant lived in the house, that the defendant was doing anything, or that any activity was occurring at the house, whether innocent or drug-related.  The limited amount of corroboration of the C/S's information here also undercuts any substantial basis for a finding of probable cause.

### 4.  Conclusion Regarding the Validity of the Warrant

When the affidavit is viewed as a whole, the potential problems detailed above are magnified.  On the one hand, the affidavit was filed by an officer with significant experience dealing with crime in this particular neighborhood based on information provided by a purportedly reliable source.  On the other hand, when boiled down to its essentials, the information included very little information gained from first-hand observations by either the C/S or Agent Malone.  Of course, the first-hand information that was provided by the C/S was significant: the observation of a gun, drugs, and drug

distribution paraphernalia in the residence on November 1, 2007 and the observation of the defendant at the residence with a different gun on January 6, 2008.  However, the source of the most time-sensitive information–that the defendant, on January 9, 2008, was expecting a delivery of drugs in the near future–is not entirely clear..

Additionally, almost none of the information provided by the C/S was corroborated either by other sources or by independent investigatory techniques such as surveillance or a controlled purchase of drugs.  Therefore, the C/S's reliability becomes even more critical.  As noted above, Agent Malone asserted that the C/S was reliable, but did not provide much specific information with which to evaluate this reliability.  Moreover, much of the information provided by the C/S in fact came from other unknown sources, and there is no indication of the reliability of these sources, who presumably are not cooperating with law enforcement.

Though it is a close call, when viewing all the information provided together, in light of the sources (known or unknown) of that information and the minimal corroboration that was done, I conclude that the affidavit does not provide a substantial basis for the magistrate judge's finding of probable cause here, and the warrant is invalid.

**B.  Good Faith Exception**

However, the evidence will not be suppressed, because, though the warrant is invalid, it is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *United States v. Leon*, 468 U.S. 897, 923 (1984).  When

an affidavit presents a "close call," it is more likely that it was objectively reasonable for officers to rely upon the magistrate judge's determination. *United States v. Hodge*, 246 F.3d 301, 309 (3d Cir. 2001) ("At a minimum, the affidavit was not clearly lacking in indicia of probable cause, but presented a close call.  Once the magistrate judge made that call, it was objectively reasonable for the officers to rely on it.")

This affidavit is not so plainly lacking in probable cause as to render the searching officers' reliance unreasonable.  The affidavit does contain the assertion that the C/S was reliable and had provided reliable information in the past, does include purported first-hand observations by the C/S of drugs, drug distribution paraphernalia, and firearms, and the connection between the defendant and the residence to be searched was verified through a search of police records.  There is also no indication that any of the other exceptions to the good faith rule are met.  *See Williams*, 3 F.3d at 74 n.4.  Defendant does not argue that 1.) the magistrate judge relied on a deliberate or recklessly false affidavit; 2.) the magistrate judge abandoned her judicial role and failed to perform her neutral and detached function; or 3.) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.  *Id.*

Though I find the warrant to be invalid, the searching officers' reliance on the warrant was not objectively unreasonable.  The officers were entitled to rely in good faith on the magistrate judge's authorization.

## III. CONCLUSION

Defendant's motion to suppress is denied.  An appropriate order accompanies this memorandum.